## SUPREME COURT.

GEORGE F. VIETOR *et al.*, respondents, agt. MOSES HENLEIN *et al.*, appellants.

WILLIAM E. ISELIN *et al.*, respondents, agt. MOSES HENLEIN *et al.*, appellants.

EMIL OELBERMAN *et al.*, respondents, agt. MOSES HENLEIN *et al.*, appellants.

*Attachments — Affidavits of fraud which are insufficient to sustain an attachment — Acts which would not amount to fraud.*

Where the affidavits upon which attachments were granted failed to show affirmatively that the debts upon which the suits were brought, and for which the attachments were issued, were due at the time of the commencement of the suits and of the issuing of the attachments, but it appeared that the general terms of the sale of goods by plaintiffs to customers were "five per cent off, cash in thirty days, or two per cent by customers giving their note at four months in settlement of the bills," and the notes had not been given by defendants:

*Held*, that the failure to pay cash in thirty days would not have the effect to make the debts due at that time, but would operate as an election on the part of the buyers to take the credit of four months, and mere neglect to give the notes, without refusal of application for them, would not give the right to immediate action.

A memorandum, as part of the bills of sale showing that the sales were at four months, should control on the question of terms instead of the usage of plaintiffs or entries in their books of sale.

Where it was claimed that debts for goods sold on credit had become presently due because the sales were procured on fraudulent representations, and the only representations alleged were those made to sellers by mercantile agencies of statements made to these agencies by defendants as to their condition generally:

*Held*, that it must be clearly shown that the accused buyer made these statements to the agency with fraudulent intent to use such agency as an instrument in accomplishing a fraud upon his vendor or some other seller.

The payment shortly before an assignment for the benefit of creditors, and in contemplation of it, of a debt to a former partner, if actual and honest would be no fraud *per se*, nor would the drawing out by defend-

ants, respectively, considerable sums of money from the firm before the assignment and in contemplation of it, if done under a mistake as to their rights and not with intent to defraud creditors, or with a design to conceal property with the purpose of defrauding them, be such a fraudulent disposition of property as to entitle a simple creditor to attachment under the provisions of the Code.

*First Department, General Term, October,* 1884.

*Before* DAVIS, *P. J.*, BRADY *and* DANIELS, *JJ.*

APPEALS from orders of special term denying motions to vacate attachments.

*Blumensteil & Hirsch,* for appellants.

*James Dunn,* for respondents.

DAVIS, *P. J.* — The affidavits in these several cases are all of the same pattern, change of names and amounts being made. They fail to show affirmatively that the debts upon which the suits were brought, and for which the attachments were issued, were due at the time of the commencement of the suits and of the issuing of the attachments. On this ground the several motions to vacate the attachment were granted, but before any order was entered on the decision the plaintiffs on further affidavits applied for a reargument of the motions, which was granted, and on such reargument the motions to vacate were denied. From the orders entered on this decision these appeals are taken. It is insisted by the respondents that the decision of the special term was correct on two grounds :

*First.* That the several debts were due because the terms of the sales of the goods for the purchase of which they were contracted were, " five per cent off, cash in thirty days ; or two per cent off, by defendants giving their note to their own order at four months in settlement of the bills," and that the notes not having been given, the debts became due at the

expiration of the thirty days. These were the general terms of sales of goods by the several plaintiffs to their customers, as appear by their "term books." But these terms, if applicable to these particular debts, gave an option to the buyer to secure five per cent discount by paying cash in thirty days, in default of doing which they were to give their notes at four months and have a discount of two per cent only. The failure to pay cash in thirty days would not have the effect to make the debts due at the end of that time, but would operate as an election on the part of the buyers to take the credit of four months and a discount of two per cent. If on requirement they should refuse after the thirty days expired to give the notes, that refusal might then operate to make the debt due and suable presently for a breach of the condition which requires the notes to be given. There is nothing in the case to show that the defendants refused to give notes or were asked to do so, and mere neglect, without refusal of any application for the notes, can hardly be said to give a right of immediate action, but in this case the bills of sale show that the sales were at four months, two per cent off. A memorandum to that effect is made by plaintiffs upon the bills, and that memorandum, as part of the bills of sale, is to control on the question of terms instead of the usage of plaintiffs or entries in their books of sale. We think the plaintiffs fail to show that by the terms of the contract of sale a right of action had accrued in either of the cases.

The second ground is, that the debts for the goods sold were presently due, because the sales were procured by fraudulent representations. No such fraudulent representations are claimed to have been made to the plaintiffs at the time of the purchase to induce the sales, but it is claimed that misrepresentations were made to mercantile agencies, who furnished the same to the several plaintiffs, and they acted, in dealing with defendants, on the credit of such statements. The defendants appeared to have been for a long time in business with an established credit. The mercantile agencies from

Vietor *et al.* agt. Henlein *et al.*

time to time had entered in their books what are said to be statements substantially made by the defendants as to their capital, stock on hand and condition generally, and these statements were furnished by the agencies to the plaintiffs as their customers. The affidavits on the part of the defendants show, or tend to show, that the alleged statements were not made as reported by the agencies, but that portions of them as made were materially different from the mercantile reports. On looking through the affidavits, it is quite apparent that this ground for claiming the maturity of the debts is an afterthought, not relied upon on the first motion, but growing out of an intimation in the opinion of the court granting the motions to the effect that fraud in contracting the debts might be shown upon the trial to establish that they were due when the suits were brought. We are not satisfied by the affidavits that any such alleged fraud was committed to accomplish the purpose in view. The plaintiff should be held to show in substance that the goods were obtained on credit on false pretenses, otherwise every merchant who buys a bill of goods is at the mercy of the mercantile agencies and liable to immediate suit, arrest and imprisonment for discrepancies which appear between the agency reports and his real condition. Where the only representations made are those furnished to sellers by the agencies, it must be clearly shown that the accused buyer made these statements to the agency with fraudulent intent to use such agency as an instrument in accomplishing a fraud upon his vendor or some other dealer. In this case that fact is not so clearly disclosed as to justify us in saying that a fraud was perpetrated through the medium of the agencies of a character sufficient to justify proceedings therefor, either criminal or civil.

The question whether the evidence shows a fraudulent disposition of the property of the defendant sufficient to justify an attachment is a secondary one. The defendants made an assignment for the benefit of their creditors. Within a few weeks before making the assignment they, in contemplation

of it, paid off a considerable indebtedness owing to a former partner, who had some years previously retired from the firm, leaving his liquidated capital and profits in the business as a loan to the new firm, subject to call. The payment of such a debt, if actual and honest, would be no fraud *per se*. It in that case would be as much a debt of the firm as any other for borrowed money; and, being due presently, could be either paid or preferred, if genuine, at the option of the debtors.

The defendants also, in contemplation of an assignment, and within a few preceding weeks, drew out, respectively, from the firm certain sums of money to meet their individual debts then owing for expenses of living already accrued, and to provide funds for the support of their families for a few months, until they could settle their affairs and resume business in some form. Whether this transaction would evade the assignment when assailed by creditors is one question; whether it is such an actual fraudulent disposition of property as entitled creditors to proceed by attachment or warrant of arrest is quite another. The latter question would depend largely upon the intent or good faith of the debtor, whether he acted upon advice or belief of legal right to make such a withdrawal to meet the exigencies of his family, with no intent to defraud creditors or with a design to conceal property with the purpose of defrauding them. In this case the defendants stated frankly and fully to the creditors what they had done, and seem to have concealed nothing in that regard. The act was a mistake as to their rights, and doubtless an illegal one, but, as shown by the affidavits in this case, we think it was not such a fraudulent disposition of property as entitled a simple creditor to attachment under the provisions of the Code.

We think the motions to vacate the attachments should have been granted, the order appealed from should be reversed, and the motions to vacate granted, with the usual costs and disbursements of appeal and the one motion in the court below.